## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TONY J. BLANE | : | |
| | : | |
| Plaintiff, | : | Case No. |
| | : | |
| v. | : | TRIAL BY JURY DEMANDED |
| | : | |
| GATEWAY FOUNDATION, INC. | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

## THE PARTIES

1. Plaintiff, Tony Blane ("Plaintiff") was at all times relevant to this complaint a resident of Smyrna, Delaware.

2. Defendant, Gateway Foundation, Inc. ("Defendant") is a public corporation organized and existing under the laws of the State of Delaware.

## JURISDICTION

3. This Court has jurisdiction based upon the existence of a question arising under the laws of the United States of America. This action arises under Title VII, of the Civil Rights Act of 1954, 42 U.S.C. §2000e, et. seq., as amended by the Civil Rights Act of 1991, §704 of Title VII. Accordingly, this Court has jurisdiction over the controversy based upon the provisions of 42 U.S.C. §2000e-5(f)(3) as well as 28 U.S.C. §§1331 and 1334.

## VENUE

4. The unlawful employment practices alleged herein were committed within the State of Delaware. Accordingly, venue lies in the United States District Court for the District of Delaware.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. The Plaintiff timely filed a written charge of discrimination with the Equal Employment Opportunity Commission and Delaware Department of Labor on February 27, 2020.

6. The Equal Employment Opportunity Commission issued Plaintiff a "Right to Sue Notice" which was received by Plaintiff May 30, 2021. *EEOC Right to Sue Notice* attached as Ex. 1.

## FACTS

7. Plaintiff Blane is a 48 year old Caucasian male.

8. Plaintiff Blane was employed by Gateway from May 20, 2015 until October 18, 2019 as a Counselor 1.

### I. GATEWAY DISCRIMINATED AGAINST BLANE BECAUSE OF HIS SEX.

9. Despite his longevity and credentials, Blane was continuously passed over for a supervisor position based on his sex.

10. Blane was continuously passed over for promotions which were given to less educated and less qualified female employees.

11. Blane was denied performance reviews and pay increases as a result of his sex.

12. Promotions and pay increases were only given to female employees who were loyal to Blane's supervisor and program director Laurie Dyer.

13. In addition, Dyer refused to compensate Blame for paid time off (PTO).

14. All of the supervisors at the Defendant's workplace were females who pledged loyalty to Dyer.

## II. BLANE REPORTS HIPPA AND DISCRIMINATION ISSUES TO HUMAN RESOURCES AND SUPERIORS.

15. Throughout his employment at Gateway, Tony Blane complained to human resources (HR) and to the on-site director Kate Fitzhugh, multiple times about violations involving Laurie Dyer of laws and regulations regarding the health and safety of employees and patients.

16. Despite these complaints, nothing was done.

17. However, Blane was retaliated against by Laurie Dyer.

18. Ms. Dyer was notified of Blane's charges by HR and Fitzhugh, thereby breaking Blane's confidentiality and whistleblower status.

19. Ever since Dyer was made aware of Blane's complaints, his work environment at Gateway became hostile.

20. Two co-workers (both African-Americans), Jerrod Bowen and Christa Alteriso, also complained of race discrimination by Dyer, both were unjustly terminated, leaving Blane very stressed, depressed and fearful for his own job security.

21. During Blane's employment, clients' confidential records were exposed in direct violation of HIPPA since phone calls were made at the courtesy desk to courts, etc., right out in the open.

22. The caseload counselors are supposed to all have their own offices, but they do not, counselors are paired up two to an office, conducting client business at the same time.

23. Blane brought to the attention of Dyer and Fitzhugh that clients and staff feel unsafe and uncomfortable by the fact that the clients they are admitting don't meet the legal criteria for admission.

24. Blane's concerns fell on deaf ears.

25. Gateway brought in clients that do not meet federal housing criteria, just so Gateway could keep their numbers up to receive government funding.

26. Patients were regularly coerced into treatment by Gateway telling the insurance companies that the client needs more time because they're not ready to be discharged, even though the client had reached an end point and was ready to be discharged.

### III. BLANE IS RETALIATED AGAINST BY DYER

27. Blane was continually passed over for promotions to people who have no degree and were not certified.

28. In fact, Blane has two higher education degrees.

29. Blane received multiple "supervisions" from Dyer, similar to a "write-up", and was reported to HR in Chicago.

30. One of the supervisions was because a client's phone got washed in the washer with his clothes when in fact Blane did not even wash his clothes, an intern named Eric did, who is now an employee at Gateway.

31. Dyer badgered Blane about not getting his CADC, and threatened him with demotions and termination.

32. However, many others at Gateway do not have CADC certification, and several others who do not even have a degree. There are even caseload counselors without degrees and/or CADC certification.

33. Racism, sexism, fraud and HIPAA violations occurred on a daily basis.

34. There are no male supervisors. There are no African-American supervisors. All the supervisors are older white females.

35. Since reporting Dyer multiple times for discrimination and violations, Blane was continuously targeted.

36. Dyer continuously told Blane to shut up.

37. Dyer called Blane a "tattle tell."

38. Dyer told Blane "don't call HR on me", mocking and intimidating him.

39. Dyer yelled at Blane and rudely turned and walked away from him, continuing to yell at him while she walked down the hallway in the presence of patients.

40. Dyer embarrassed Blane in front of patients on numerous occasions.

41. Dyer told patients that Blane made a mistake or gave clients the wrong information.

42. After filing complaints regarding HIPPA and discriminatory practices, Blane endured constant criticism and insults from Dyer.

43. Dyer gossiped about Blane to other staff members on site, as well as to former staff members that no longer work at Gateway.

44. There has been client files that were missing documentation, or even had falsified documentation, prepared by other counselors.

45. There were many compliance violations at Gateway regarding the handling of clients' personal information.

46. Blane has been a whistle blower regarding these issues

47. After Blane reported these issues, Dyer continuously retaliated against him.

48. In addition, Blane supported two African Americans who filed Charges of Discrimination against Gateway which also was a cause of the retaliation against him.

49. Eventually, Blane was terminated after complaining about HIPAA issues and discriminatory practices of Dyer.

## COUNT I: SEX DISCRIMINATION

50. Plaintiff restates and realleges paragraphs 1 through 49, inclusive, as though set forth here in full.

51. Such acts as described above by defendants, its agents and employees, constitute unlawful sex discrimination and sexual harassment against Plaintiff in violation of Title VII, 42 U.S.C. §2000(6), et seq.

52. As a direct and proximate result of Defendants' unlawful discrimination, by and through its agents and employees, Plaintiff has been injured and has suffered and will continue to suffer pain, humiliation, anxiety, depression, mental anguish, emotional distress, physical manifestation of anxiety and the loss of past and future wages and benefits.

53. The language of Title VII makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory

practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973).

54. Further, "[t]he broad, overriding interest, shared by employer, employee, and consumer, is efficient and trustworthy workmanship assured through fair and racially neutral employment and personnel decisions. In the implementation of such decisions, it is abundantly clear that Title VII tolerates no racial discrimination, subtle or otherwise." *Id.* at 801

55. Discrimination claims under Title VII are analyzed under the burden-shifting framework set forth by the United States Supreme Court in *McDonnell Douglas*. A plaintiff must first present a prima facie case of discrimination by showing that: (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action despite being qualified; and (4) the circumstances of the adverse employment action give rise to an inference of discrimination. *Sarullo v. United States Postal Serv.*, 352 F.3d 789, 797 (3d Cir.2003).

56. An adverse employment action "may be ... any action that alters an employee's compensation, terms, conditions, or privileges of employment." *Collins v. Sload*, 212 Fed.Appx. 136, 140 (3d Cir.2007) (Once the plaintiff has established a prima facie case of racial discrimination, "the burden shifts to the [employer] 'to

articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir.1999)

57. Here, it is alleged that Blane was discriminated against due to being a white male.

## COUNT II: RETALIATION

58. Plaintiff restates and realleges paragraphs 1–57, inclusive, as though set forth here in full.

59. Such acts as described above by Defendant, its agents and employees, constitute unlawful continuing retaliation against Plaintiff for having complained of discrimination, participated and supporting two other employees who complained about discrimination.

60. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has been injured and has suffered and will continue to suffer economic loss, loss of wages and increased benefits, pain, fear, humiliation, anxiety, depression, mental anguish, emotional distress, and physical manifestation of anxiety.

## COURT III:
## VIOLATIONS OF DELAWARE WHISTLEBLOWER'S ACT

61. The Delaware Whistleblowers' Act makes it illegal for an employer to discharge an employee for reporting a violation which the employee knows occurred.

62. A violation being defined as "Materially inconsistent with, and a serious deviation from, standards implemented pursuant to a law, rule, or regulation promulgated under the laws of this State, a political subdivision of this State, or the United States, to protect employees or other persons from health, safety, or environmental hazards while on the employer's premises or elsewhere.."

63. Here, Blane was terminated after reporting violations of insurance compliance regulations and HIPAA violations governing Gateway.

64. In addition, Blane also reported inappropriate behavior regarding staff conduct as described above

65. Blane's complaints created animus with administration who later retaliated against him contributing to the reasons for his termination.

**WHEREFORE**, Plaintiff requests this Honorable Court to enter a judgment in his favor and against the Defendant as follows:

a. Declare the conduct engaged in by the defendant be in violation of the plaintiff's statutory rights.

b. Award the plaintiff back pay compensation for his pecuniary losses from the date of the wrongful conduct described herein until the date of any judgment.


    c.    Award the plaintiff sufficient funds to compensate him for his losses, pain and mental suffering, which cannot otherwise be compensated by equitable relief.

    d.    Award the plaintiff compensatory and punitive damages not otherwise specified.

    e.    Award the plaintiff any and all other liquidated damages, which would make the plaintiff "whole".

    f.    Award the plaintiff attorney fees, the costs of this action, pre-judgment and post judgment interest, and;

    g.    Such other and further relief as this Court feels proper.

**THE POLIQUIN FIRM, L.L.C.**

/s/ Ronald G. Poliquin
RONALD G. POLIQUIN, ESQUIRE
Delaware Bar ID No. 4447
1475 S. Governors Ave.
Dover, DE  19904
(302) 702-5501
*Attorney for Plaintiff Tony J. Blane*

Filed: August 20, 2021